1  Yosef Peretz (SBN 209288)
   yperetz@peretzlaw.com
2  David Garibaldi (SBN 313641)
   dgaribaldi@peretzlaw.com
3  PERETZ & ASSOCIATES
   22 Battery Street, Suite 200
4  San Francisco, CA 94111
   Tel: 415.732.3777
5  Fax: 415.732.3791

6  Attorneys for Plaintiff STEVEN NEWMAN

7

8                    **UNITED STATES DISTRICT COURT**

9              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11  STEVEN NEWMAN,                          | Case No.

12                          Plaintiff,      | **COMPLAINT AND DEMAND FOR A JURY TRIAL**

13  v.

14  GOOGLE LLC; and DOES 1-20,              | 1.  Disability Discrimination in Violation of the ADA (42 U.S.C. § 12112(a)): Disparate Treatment and Disparate Impact;

15                          Defendants.

16                                          | 2.  Disability Discrimination in Violation of the FEHA (Cal. Gov't Code § 12940(a)): Disparate Treatment and Disparate Impact.

17

18                                          | 3.  Failure to Accommodate a Disability in Violation of the ADA (42 U.S.C. § 12112(b)(5)(A));

19

20                                          | 4.  Failure to Accommodate a Disability in Violation of the FEHA (Cal. Gov't Code § 12940 (m));

21

22                                          | 5.  Failure to Engage in the Interactive Disability Accommodation Process in Violation of the ADA (42 U.S.C. § 12112(b)(5)(A));

23

24                                          | 6.  Failure to Engage in the Interactive Disability Accommodation Process in Violation of the FEHA (Cal. Gov't Code § 12940 (f));

25

26

27                                          | 7.  Retaliation in Violation of the ADA (42 U.S.C. § 12203(a));

28                                          | 8.  Retaliation in Violation of the FEHA

(Cal. Gov't Code § 12940 (h));
9.   Failure to Prevent Discrimination and
     Retaliation in Violation of the FEHA
     (Cal. Gov't Code § 12940(k));
10.  Wrongful Termination in Violation of
     California Public Policy;
11.  Wrongful Termination in Violation of
     Georgia Public Policy;
12.  Intentional Infliction of Emotional
     Distress Under California Law;
13.  Intentional Infliction of Emotional
     Distress Under Georgia Law;
14.  Negligent Infliction of Emotional
     Distress Under California Law;
15.  Negligent Infliction of Emotional
     Distress Under Georgia Law; and
16.  Unlawful, Unfair, and Fraudulent
     Business Practices in Violation of Cal.
     Bus. & Prof. Code §§ 17200 and 17203,
     *et seq.*

Plaintiff STEVEN NEWMAN ("Newman") complains and alleges as follows:

## I.   INTRODUCTION

1.   This is an action brought by Newman against Defendant GOOGLE LLC ("Google") for various employment law violations pertaining to Newman's employment at Google.

2.   Newman was a highly dedicated employee of Google, a company located and headquartered in Santa Clara County, California, since 2018.

3.   In July 2020, Newman was diagnosed with bipolar disorder for the first time in his life, and was then placed on a short term disability leave.

4.   As a result of his disorder, in October 2020, Newman sent a few unusual emails to his colleagues at Google. Although none of his emails were malicious or genuinely threatening, on October 30, 2020, Google's Human Resources personnel informed Newman that once his short-term disability leave was over, he would be placed on an administrative leave because of his emails. Newman's administrative leave was periodically extended by Google throughout the rest of 2020 and early 2021.

5.      On April 9, 2021, Newman was notified that he was being terminated without severance for allegedly violating Google's Code of Conduct. At no time did Google engage in the process of finding appropriate accommodations for Newman's condition, despite being on notice since July 2020. Newman's employment with google was terminated effective April 13, 2021.

6.      Newman, therefore, seeks to recover actual damages, restitution, general damages, civil penalties, statutory damages, and punitive damages he suffered as a result of the wrongful conduct he was subjected to, as well as the costs of this lawsuit, including reasonable attorneys' fees.

## II.    JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action under 28 U.S.C. §§ 13361 & 1345 and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* (the "ADA"). This Court has supplemental jurisdiction over the California Government Code ("Gov't Code") claims, other California law claims, and claims based on Georgia law, pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the United States District Court, Northern District of California, pursuant to 28 U.S.C. §1391, because Google conducts business in this district, the employment agreement between Newman and Google was entered into in this district and is governed by the laws of this district. Furthermore, a substantial part of the events and omissions giving rise to Newman's claims occurred in this district.

9.      On or around February 7, 2022, Newman has filed discrimination and retaliation claims with both the Equal Employment Opportunity Commission ("EEOC") and the California Department of Fair Employment and Housing ("DFEH"). Newman was issued a right to sue letter from the EEOC on February 10, 2022. That letter also serves as a right to sue for any FEHA claims with the EEOC acting on behalf of the DFEH in that regard. A copy of this right to sue is attached hereto as **Exhibit 1**. As such, Newman may file a Complaint against Defendants for their violations of both the ADA and the FEHA.

## III.   PARTIES

10.     Newman is and at all relevant times was an employee of Google, which is a company located in Santa Clara County, California. Newman was hired in 2018 as a Customer Engineer–gSuite Specialist, and by 2020 he was promoted to a gSuite Technical Strategy Lead.

At all times relevant to this Complaint, Newman was an employee of Google within the meaning of the California Fair Employment and Housing Discrimination Act, Gov't Code §§ 12940 ("FEHA"), and the ADA.

11.     Google is a global technology company headquartered in Santa Clara County, California. For all relevant times, Google was an employer of Newman within the meaning of the FEHA and ADA.

12.     Does 1-20 are defendants whose names are unknown and who shall be named once their identities are ascertained. Upon information and belief, Google and Defendants Does 1-20 (collectively, "Defendants") are agents of the others, and they are all managed and controlled by the same individuals and had and/or have the same policies and practices with regard to the employment of Newman. The true names and capacities, whether individual, corporate, associate or otherwise, and the true involvement of defendants sued herein as Defendants 1-20, are unknown to Newman who therefore sue said defendants by such fictitious names and will amend this Complaint to show the true names, capacities and involvement when ascertained. Newman is informed and believe and thereon allege that each of the defendants designated as a Doe is responsible in some manner for the events and happenings herein referred to, and that Newman's injuries and damages as hereinafter set forth were proximately caused by said Defendants. Newman is informed and believe and thereon allege that at all times herein mentioned, each of the Defendants sued herein was the agent and/or employee of each of the remaining Defendants, and each o them, was at all times acting within the purpose and scope of such agency and employment.

IV.     **FACTUAL ALLEGATIONS**

A.     **Newman Suffered a Bipolar Episode and Took Short Term Disability Leave**

13.     Newman was hired by Google under an employment contract that was executed by the parties on or about March 9, 2018 (the "Employment Contract"). A copy of the Employment Contact and its attachments are attached herein as **Exhibit 2**.

14.     Newman worked for Google in California, and all his managers and supervisors were located in California. The great majority of the work Newman did was in California.

15.     The general provisions of Newman's Employment Contract stipulated that the law governing the contact, and his employment at Google, would be "California law". [Section 13 of the AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION

ASSIGNMENT AND ARBITRATION AGREEMENT attached to the Employment Contract, Exhibit 2 above.]

16.     Newman worked for Google since 2018 as a Customer Engineer, gSuite Specialist. By 2020 he was promoted to gSuite Technical Strategy Lead.

17.     Newman excelled at his job, has had very positive performance reviews, and received accolades, and financial incentives in the from of stock and bonuses for the excellent job he did for Google.

18.     In late July of 2020, Newman suffered a bipolar episode, for the first time in his life.

19.     Prior to that time, Newman had a stellar work record with Google, he was never subjected to any discipline, and he never had to be discipline or counseled by his managers or Human Resources for any reason whatsoever.

20.     As a result of his medical condition and his disability, Newman sent unusual emails to other employees at Google. The unusual email Newman sent to his managers were a direct result of the manifestation of his mental disability and manic condition. The content of these messages largely regarded offers to buy gSuite for billions of dollars. This alarmed Newman's direct supervisor, Carolina Andrade ("Andrade"), who emailed him Newman links to mental health resources.

21.     Later that same month, Newman's wife, Elizabeth Newman ("Elizabeth"), contacted Andrade via email to inform her of Newman's disability and that he was being treated by his doctors.

22.     Andrade connected Elizabeth with Google Human Resources ("Human Resources") representative, Esther Yeu ("Yeu"), to discuss Newman's healthcare benefits. Both Andrade and Human Resources were thus made aware of Newman's medical condition and disabilities in 2020. Yeu referred Elizabeth to the company benefits provider, Sedgewick Claims Management Services, Inc. ("Sedgwick").

23.     Newman was diagnosed with bipolar disorder and his doctor, Dr. Gregory Haley ("Dr. Haley"), identified that he was experiencing a manic episode. Google then placed Newman on disability leave, Sedgwick communicated directly with Newman's doctors for updates. Dr. Haley reported that a full recovery could be expected, and that Newman would be able to return to work full time.

24.     The email messages sent by Newman in October 2020, clearly depicted he was unwell and mentally disabled, but none were malicious or genuinely threatening. One email, however, that Google construed as being threatening was sent by Newman to his colleague, John McDonald ("McDonald") who then resided in Canada. It stated that Newman was upset with McDonald, but it does not threat any harm on McDonald.

25.     It was impossible for Newman to pose an actual threat to coworkers as the employees at issue lived far way from Newman at the time the messages were sent. McDonald in particular lived in Canada at that time, and access to Canada *was denied to all Americans* given the Conid-19 pandemic restrictions in place at the time by both the U.S. and the Canadian governments. Further, Newman's father had been monitoring Neman full-time since the manic episodes began. Newman was never a risk to his colleagues at Google because he was under contact supervision and was geographically isolated.

26.     Newman later followed up with both Human Resources and his previous manager, Ben Lavalle ("Lavalle"), to apologize for the email. Newman reiterated that it was never his intention to come off as threatening.

27.     Additionally, Newman sent an apology email to Yeu and asked that she forward an apology on his behalf to Newman. Yeu told Newman she did this on December 8, 2020.

28.     In November 2020, Newman began seeing a bipolar disorder specialist, Dr. Jeff Rakofsky ("Dr. Rakofsky"). According to Dr. Rakofsky's November 2, 2020, psychiatric report, Newman was not behaving dangerously, was willing to take medication for treatment, and agreed to continuous supervision from his father.

29.     On November 16, 2020, Sedgwick informed Newman that his leave had been extended through December 14, 2020.

30.     On January 11, 2021, Newman received another update from Sedgwick indicating his leave was extended through January 19, 2021.

**B.      Google Terminates Newman's Employment, Failing to Accommodate his Disability**

31.     On January 15, 2021, in anticipation of his short-term leave ending, Newman emailed Human Resources to notify Google that his doctor had approved his return to work on January 20, 2021, and that he was ready, able, and willing to go back to work.

32.     In response, Human Resources informed Newman that Google had initiated an investigation and that he would need to respond to their questioning.

33.     On January 22, 2021, Newman willingly met with Human Resources over the phone to answer questions and participate in the internal investigation.

34.     On March 18, 2021, New man was informed that the investigation was still ongoing.

35.     At no time did the company ask for any additional documentation or input from Newman or his doctors. Newman was also never contacted regarding accommodations in the workplace or to discuss how he might return to work with or without restrictions.

36.     On April 9, 2021, with no prior warning or notice, Newman was notified that he was being terminated without severance for allegedly violating Google's Code of Conduct. Newman was terminated from Google effective April 13, 2021.

37.     At no time did Google engage in the process of finding appropriate accommodations for Newman's condition, despite being on notice of his disability and medical condition since July 2020.

38.     At no time did Google accommodate Newman's medical condition and disability, despite being on notice of his disability and medical condition since July 2020.

39.     Since his termination, Newman has maintained complete stability, with no additional manic episodes. He continues to undergo regular visits with his psychologist and further manages his condition with medication.

40.     Newman has not made any attempts to communicate with his former colleagues at Google since his termination.

41.     Although he took significant efforts to find a new full-time job, Newman was not able to find one to date.

42.     As a result of Defendants' conduct, Newman suffered, and continues to suffer, severe emotional distress, pain, and suffering.

**FIRST CAUSE OF ACTION**
**Disability Discrimination in Violation of the ADA (42 U.S.C. § 12112(a)):**
**Disparate Treatment and Disparate Impact**
**(Asserted by Newman against Defendants)**

43.     The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

44.     To establish a *prima facie* case of employment discrimination under the ADA, a plaintiff must prove three elements: (1) the plaintiff is disabled within the meaning of the ADA;

(2) the plaintiff is a qualified individual able to perform the essential functions of the job, either with or without reasonable accommodations; and (3) his employer terminated him because of his disability. *Hashbarger v. Sierra Pacific Co.* (2002) 26 Fed.Appx. 707.

45.     The ADA defines the term "disability" with respect to an individual as a physical or mental impairment that substantially limits one or more major life activities of such an individual; a record of such an impairment or being regarded as having such an impairment. 42 U.S.C. § 12102.

46.     In 2020 Newman was diagnosed with bipolar disorder. At the time of his diagnosis, Newman was a Customer Engineer–gSuite Technical Strategy Lead.

47.     Google was made aware of Newman's medical condition and disabilities in July 2020 and placed him on a short-term disability leave. Newman's doctor reported that a full recovery could be expected, and that Newman would be able to return to work full-time.

48.     In November 2020, Newman began seeing a bipolar disorder specialist, Dr. Rakofsky who reported that Newman was not behaving dangerously, was willing to take medication for treatment, and agreed to continuous supervision from his father.

49.     On April 9, 2021, Newman was informed that his employment with Google had been terminated without severance for allegedly violating Google's Code of Conduct.

50.     Google terminated Newman's employment because he had bipolar disorder.

51.     As a direct and proximate result of Defendants' wrongful conduct, Newman has suffered damages in an amount to be proven at trial, including, but not limited to, a loss of income and benefits, severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

52.     In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Newman's rights, and Newman is therefore entitled to punitive damages in an amount according to proof at the time of trial.

## SECOND CAUSE OF ACTION
### Disability Discrimination in Violation of the FEHA (Gov't Code § 12940(a)):
### Disparate Treatment and Disparate Impact
### (Asserted against All Defendants)

53.     The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

54. Newman may bring claims against Google based on California law because he worked in California and because the Employment Contract stipulated that the parties' relationship and the contract be governed by California law.

55. The FEHA prohibits discrimination on the basis of disability. Under the three-stage *McDonnell-Douglas* test an employee may establish a prima facie case of discrimination by showing that actions taken by the employer were based on a prohibited discriminatory criterion from which one can infer. *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 972, 802. However, if such actions remain unexplained, the appropriate standard is that the employee must show that it is more likely than not that the actions were based on discrimination. *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355-356.

56. For an employee to prevail on a disability discrimination claim in violation of FEHA, the following elements must be met: (1) the plaintiff suffered from a disability; (2) the plaintiff was qualified to do his job; and (3) the plaintiff was subjected to adverse employment action because of his disability. Govt Cod §§ 12940 (a, h, m, n); *Finegan v. County of Los Angeles* (2001) 91 Cal.App.4th 1, 7.

57. Newman suffered from bipolar disorder, which is explicitly listed as a qualifying disability under FEHA. Cal. Govt Code § 12926.1(c). Newman's wife put Google on notice of his medical condition in July of 2020. Additionally, Google was on notice of his disability because he took short term disability leave for treatment of his bipolar disorder.

58. Newman was qualified to do his job, demonstrated by his doctor's approval of his return to work.

59. Newman was subjected to adverse employment action when he was placed on administrative leave on January 15, 2021, and when he was terminated on April 13, 2021. These actions were taken against him because of his bipolar disorder and for taking a leave to care for his disability.

60. Newman may bring claims against Google based on California law because he worked in California and because the Employment Contract stipulated that the parties' relationship and the contract be governed by California law.

61. As a direct and proximate result of Defendants' wrongful conduct, Newman has suffered damages in an amount to be proven at trial, including, but not limited to, a loss of

income and benefits, severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

62.    In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Newman's rights, and Newman is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### THIRD CAUSE OF ACTION
### Failure to Accommodate in Violation of the ADA (42 U.S.C. § 12112(b)(5)(A))
### (Asserted against All Defendants)

63.    The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

64.    An employer violates the ADA for failure to accommodate, if: (1) the employee was a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability. *Smith v. Clark City Sch. Dist.,* (9th Cir. 2013) 727 F.3d 950, 955. The ADA defines a qualified individual as one who can perform the essential functions of his job with or without reasonable accommodation. (*Id.*)

65.    "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement reasonable accommodation that will enable the employee to perform her duties." *Humphrey v. Mem'l Hosp. Ass'n,* (9th Cir. 2001), 239 F.3d 1128, 1138; *Dunlap v. Liberty Natural Products, Inc.* (9th Cir. 2017) 878 F.3d 794, 799.

66.    Newman suffered from bipolar disorder in 2020, while he was employed by Google as a Customer Engineer–gSuite Technical Strategy Lead. Newman was qualified to do his job, demonstrated by his doctor's approval of his return to work.

67.    Newman's wife put Google on notice of his medication condition in July of 2020. Additionally, Google was on notice of Newman's disability because he took Short Term Disability Leave for treatment of his bipolar disorder.

68.    Google never engaged with Newman in the process of determining any alternative accommodations to enable Newman to perform his duties, thereby failing to accommodate Newman for his medical condition and disability.

69.    As a direct and proximate result of Defendants' wrongful conduct, Newman has suffered damages in an amount to be proven at trial, including, but not limited to, a loss of

income and benefits, severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

70.     In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Newman's rights, and Newman is therefore entitled to punitive damages in an amount according to proof at the time of trial.

## FOURTH CAUSE OF ACTION
### Failure to Accommodate a Disability in Violation of the FEHA
### (Gov't Code § 12940 (m))
### (Asserted by Newman against All Defendants)

71.     The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

72.     Newman may bring claims against Google based on California law because he worked in California and because the Employment Contract stipulated that the parties' relationship and the contract be governed by California law.

73.     An employer violates FEHA if: (1) the employee suffered a disability; (2) the employee could perform the essential functions of the job with a reasonable accommodation; and (3) the employer failed to reasonably accommodate the employee's disability. Govt Code §§ 12490 (a, h, m, n) *Nealy v. City of Santa Monic* (2015) 234 Cal.App.4th 359, 373.

74.     Newman suffered from bipolar disorder in 2020, while he was employed by Google as a Customer Engineer – gSuite Technical Strategy Lead. Newman was qualified to do his job, demonstrated by his doctor's approval of his return to work.

75.     Newman's wife put Google on notice of his medication condition in July of 2020. Additionally, Google was on notice of Newman's disability because he took short term disability leave for treatment of his bipolar disorder.

76.     Google never engaged with Newman in the process of determining any alternative accommodations to enable Newman to perform his duties, thereby failing to accommodate Newman for his medical condition and disability.

77.     As a direct and proximate result of Defendants' wrongful conduct, Newman has suffered damages in an amount to be proven at trial, including, but not limited to, a loss of income and benefits, severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

78.     In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Newman's rights, and Newman is therefore entitled to punitive damages in an amount according to proof at the time of trial.

**FIFTH CAUSE OF ACTION**
**Failure to Engage in the Interactive Disability Accommodation Process**
**in Violation of the ADA (42 U.S.C. § 12133)**
**(Asserted by Newman Against All Defendants)**

79.     The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

80.     "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement reasonable accommodation that will enable the employee to perform her duties." *Humphrey v. Mem'l Hosp. Ass'n,* (9th Cir. 2001), 239 F.3d 1128, 1138; *Dunlap v. Liberty Natural Products, Inc.* (9th Cir. 2017) 878 F.3d 794, 799.

81.     Newman suffered from bipolar disorder in 2020, while he was employed by Google as a Customer Engineer–gSuite Technical Strategy Lead. Newman was qualified to do his job, demonstrated by his doctor's approval of his return to work.

82.     Newman's wife put Google on notice of his medication condition in July of 2020. Additionally, Google was on notice of Newman's disability because he took Short Term Disability Leave for treatment of his bipolar disorder.

83.     Google never engaged with Newman in the process of determining any alternative accommodations to enable Newman to perform his duties, thereby failing to engage in the interactive process of finding an appropriate accommodation.

84.     As a direct and proximate result of Defendants' wrongful conduct, Newman has suffered damages in an amount to be proven at trial, including, but not limited to, a loss of income and benefits, severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

85.     In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Newman's rights, and Newman is therefore entitled to punitive damages in an amount according to proof at the time of trial.

//

//

### SIXTH CAUSE OF ACTION
**Failure to Engage in the Interactive Disability Accommodation Process in Violation of the FEHA (Gov't Code § 12940 (f))**
**(Asserted by Newman Against All Defendants)**

86.     The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

87.     Newman may bring claims against Google based on California law because he worked in California and because the Employment Contract stipulated that the parties' relationship and the contract be governed by California law.

88.     At all times relevant to this Complaint, the FEHA and its implementing regulations were in full force and effect and binding on the Google.

89.     Pursuant to Gov't Code § 12940(n) it is unlawful for an employer to fail to engage in the interactive process after a reasonable accommodation is requested by an employee or after it becomes apparent to the employer than an employee's physical disability is impeding the employee's ability to carry out the essential functions of his job.

90.     Pursuant to Gov't Code §§ 12926 and 12926.1 Newman has physical, cognitive, and mental disabilities, and/or was perceived as or treated as having physical, cognitive, and mental disabilities by Google.

91.     Google never engaged with Newman in the process of determining any alternative accommodations to enable Newman to perform his duties, thereby failing to engage in the interactive process of finding an appropriate accommodation.

92.     As a direct and proximate result of Defendants' wrongful conduct, Newman has suffered damages in an amount to be proven at trial, including, but not limited to, a loss of income and benefits, severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

93.     In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Newman's rights, and Newman is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### SEVENTH CAUSE OF ACTION
**Retaliation in Violation of the ADA (42 U.S.C. § 12203(a))**
**(Asserted by Newman Against All Defendants)**

94.     The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

95.     Pursuant to 42 U.S.C § 12203(b) it is unlawful for an employer to retaliate against any individual because such individual has opposed any act or practice made unlawful by this statue.

96.     Newman placed Google on his medical condition and disability and sought accommodations for them.

97.     In response to Newman's requests, Google failed to accommodate Newman, and instead placed on an unjustified administrative leave, and then terminated him from his employment at Google.

98.     As a direct and proximate result of Defendants' wrongful conduct, Newman has suffered damages in an amount to be proven at trial, including, but not limited to, a loss of income and benefits, severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

99.     In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Newman's rights and Newman is therefore entitled to punitive damages in an amount according to proof at the time of trial.

**EIGHTH CAUSE OF ACTION**
**Retaliation in Violation of the FEHA (Gov't Code § 12940 (h))**
**(Asserted by Newman Against All Defendants)**

100.     The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

101.     Newman may bring claims against Google based on California law because he worked in California and because the Employment Contract stipulated that the parties' relationship and the contract be governed by California law.

102.     At all times relevant to this Complaint, the FEHA and its implementing regulations were in full force and effect and binding on Google.

103.     Pursuant to Gov't Code § 12940(h), it is unlawful for an employer to discharge or demote an employee, or to subject them to any adverse employment action in retaliation for making a complaint about unlawful activity.

104.     In engaging in the conduct described above, Google did not engage in the interactive accommodation process with Newman and put him on administrative leave and subsequently terminated his employment, based on his disability.

105.    As a direct and proximate result of Defendants' wrongful conduct, Newman has suffered damages in an amount to be proven at trial, including, but not limited to, a loss of income and benefits, severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

106.    In doing the acts herein alleged, Defendants acted with oppression, fraud, or malice, and in reckless or in willful disregard of Newman's rights and Newman is therefore entitled to punitive damages in an amount according to proof at the time of trial.

**NINTH CAUSE OF ACTION**
**Failure to Prevent Discrimination and Retaliation in Violation of the FEHA**
**(Gov't Code § 12940(k))**
**(Asserted by Newman Against All Defendants)**

107.    The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

108.    Newman may bring claims against Google based on California law because he worked in California and because the Employment Contract stipulated that the parties' relationship and the contract be governed by California law.

109.    At all times relevant to this Complaint, the FEHA and its implementing regulations were in full force and effect and binding on Google.

110.    Pursuant to Gov't Code § 12940(k), it is unlawful for an employer to fail to prevent harassment, discrimination or retaliation form existing in the workplace.

111.    In engaging in the conduct described above, Google failed to engage in any reasonable steps to prevent discrimination or retaliation against Newman.

112.    As a direct and proximate result of Defendants' wrongful conduct, Newman has suffered damages in an amount to be proven at trial, including, but not limited to, a loss of income and benefits, severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

113.    In doing the acts herein alleged, Defendants acted with oppression, fraud or malice, and in reckless or in willful disregard of Newman's rights and Newman is therefore entitled to punitive damages in an amount according to proof at the time of trial.

//
//
//

1
2

**TENTH CAUSE OF ACTION**
**Wrongful Termination in Violation of California Public Policy**
**(Asserted by Newman Against All Defendants)**

3

114.    The allegations of the preceding paragraphs are re-alleged and incorporated

4

herein by reference.

5

115.    Newman may bring claims against Google based on California law because he

6

worked in California and because the Employment Contract stipulated that the parties'

7

relationship and the contract be governed by California law.

8

116.    An employer commits tortious termination in violation of public policy when

9

there is an applicable public policy protecting an employee with a certain status and the

10

employer terminates the employee because of his or her protected status. *Tameny v. Atlantic

11

*Richfield Co.* (1980) 27 Cal.3d 167. A duty is implied by law on the part of the employer to

conduct its affairs in compliance with public policy, expressed judicially or by statute.

12

117.    The public police expressed in the ADA and FEHA protects employees from

13

discrimination based upon their disability. The facts set forth demonstrate that Google

14

terminated Newman's employment and took other adverse employment actions against him

15

because he suffered from a bipolar disorder, and took a short term leave to treat his disability.

16

118.    By its conduct toward Newman, Google violated California public policy, and

therefore engaged in tortious conduct against Newman under California law.

17

119.    Google's actions, as described above, directly, and proximately have caused, and

18

continue to cause, Newman to suffer losses of income and professional opportunities and have

19

caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal

20

embarrassment, and damage to his professional reputation.

21

120.    In doing the acts here in, Google acted with oppression, fraud or malice, and in

22

conscious disregard of Newman's rights, therefore Newman is entitled to punitive damages in

23

an amount according to proof at the time of trial.

24

**ELEVENTH CAUSE OF ACTION**
**Wrongful Discharge in Violation of Georgia Public Policy**
**(Asserted by Newman Against All Defendants)**

25

26

121.    The allegations of the preceding paragraphs are re-alleged and incorporated

herein by reference.

27

122.    An employer many do not terminate an employee on account of his or her

28

disability as protected by ADA.

123.    The public policy expressed in the ADA protects employees from discrimination based upon their disability. The facts set forth demonstrate that Google terminated Newman's employment and took other adverse employment actions against him because he suffered from a bipolar disorder, and took a short term leave to treat his disability.

124.    By its conduct toward Newman, Google violated Georgia public policy, and therefore engaged in tortious conduct against Newman under Georgia law.

125.    Google's actions, as described above, directly, and proximately have caused, and continue to cause, Newman to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

126.    In doing the acts here in, Google acted with oppression, fraud, or malice, and in conscious disregard of Newman's rights, therefore Newman is entitled to punitive damages in an amount according to proof at the time of trial.

### TWELTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress Under California Law
### (Asserted by Newman Against All Defendants)

127.    The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

128.    Newman may bring claims against Google based on California law because he worked in California and because the Employment Contract stipulated that the parties' relationship and the contract be governed by California law.

129.    Defendants were aware that Newman suffered from medical condition and a disability.

130.    Defendants acted with reckless disregard of the probability that their acts would violate Newman's rights and cause Newman severe emotional distress.

131.    Defendants had a duty to refrain from causing damages to Newman.

132.    Defendants intentionally abused their power as an employer over Newman by discriminating, and retaliating against Newman in a manner that caused humiliation and distress.

133.    As a direct and proximate result of Defendants' wrongful conduct, Neman has suffered damages in an amount to be proven at trial, including, but not limited to, a loss of

income and benefits, severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

134.    In doing the acts herein alleged, Defendants acted with oppression, fraud, malice, and in reckless or in willful disregard of Newman's rights and Newman is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### THIRTEENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress Under Georgia Law
### (Asserted by Newman Against All Defendants)

135.    The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

136.    Defendants were aware that Newman suffered from a medical condition and a disability.

137.    Defendants acted with reckless disregard of the probability that their acts would violate Newman's rights and cause Newman severe emotional distress.

138.    Defendants had a duty to refrain from causing damages to Newman.

139.    Defendants intentionally abused their power as an employer over Newman by discriminating and retaliating against Newman in a manner that caused humiliation and distress.

140.    As a direct and proximate result of Defendants' wrongful conduct, Neman has suffered damages in an amount to be proven at trial, including, but not limited to, a loss of income and benefits, severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

141.    In doing the acts herein alleged, Defendants acted with oppression, fraud, malice, and in reckless or in willful disregard of Newman's rights and Newman is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### FOURTEENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress Under California Law
### (Asserted by Newman Against All Defendants)

142.    The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

143.    Newman may bring claims against Google based on California law because he worked in California and because the Employment Contract stipulated that the parties' relationship and the contract be governed by California law.

144.    Defendants owed Newman a duty to operate Newman's place of employment in a manner that was free from unlawful discrimination, and retaliation, and to hire, train, supervise and discipline its employees to fulfill that duty.

145.    Defendants had a duty to refrain from causing damages to Newman.

146.    Defendants negligently violated the above duties by discriminating against, retaliating against Newman and by permitting Newman to be retaliated and discriminated against as set forth above.

147.    Defendants also had a duty to exercise due care toward Newman and to refrain from carelessly, negligently, and arbitrarily inflicting emotional distress upon him.

148.    Defendants breached the aforesaid duties by interfering with Newman's work environment, by failing to comply with all applicable laws governing Newman's rights, including his rights to work in an environment free of discrimination and retaliation.

149.    Defendants knew, or should have known, that its failure to exercise due care with regard to the aforementioned conduct would cause Newman severe emotional distress.

150.    As a direct and proximate result of Defendants' wrongful conduct, Newman has suffered damages in an amount to be proven at trial, including, but not limited to, a loss of income and benefits, severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

### FIFTEENTH CAUSE OF ACTION
#### Negligent Infliction of Emotional Distress Under Georgia Law
#### (Asserted by Newman Against All Defendants)

151.    The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

152.    Defendants owed Newman a duty to operate Newman's place of employment in a manner that was free from unlawful discrimination, and retaliation, and to hire, train, supervise and discipline its employees to fulfill that duty.

153.    Defendants had a duty to refrain from causing damages to Newman.

154.    Defendants negligently violated the above duties by discriminating against, retaliating against Newman and by permitting Newman to be retaliated and discriminated against as set forth above.

155.    Defendants also had a duty to exercise due care toward Newman and to refrain from carelessly, negligently, and arbitrarily inflicting emotional distress upon him.

156.    Defendants breached the aforesaid duties by interfering with Newman's work environment, by failing to comply with all applicable laws governing Newman's rights, including his rights to work in an environment free of discrimination and retaliation.

157.    Defendants knew, or should have known, that its failure to exercise due care with regard to the aforementioned conduct would cause Newman severe emotional distress.

158.    As a direct and proximate result of Defendants' wrongful conduct, Newman has suffered damages in an amount to be proven at trial, including, but not limited to, a loss of income and benefits, severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

### SIXTEENTH CAUSE OF ACTION
**Unlawful, Unfair, and Fraudulent Business Practices in Violation of Bus. & Prof. Code §§ 17200 and 17203, *et seq*.**
**(Asserted by Newman Against All Defendants)**

159.    The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

160.    Newman may bring claims against Google based on California law because he worked in California and because the Employment Contract stipulated that the parties' relationship and the contract be governed by California law.

161.    California Business and Professions Code ("Bus. & Prof. Code") § 17200, *et seq*. prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.

162.    Bus. & Prof. Code § 17201 provides: "Notwithstanding Section 2289 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in case of unfair competition."

163.    Bus. & Prof Code § 17203 provides that the court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

164.    Bus. & Prof. Code § 17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to pursue a civil action for violation of the Unfair Business Practices Act.

165.    Beginning at an exact date unknown to Newman, but at least since 4 years prior to filing this suit, Defendants have committed acts of unfair competition as defined by the Bus.

& Prof. Code by engaging in the unlawful, unfair, and fraudulent acts and practices described herein, violating statutes including but not limited to the following:

     a.    Violations of the FEHA as described above.

     b.    Violations of the ADA as described above.

     c.    Violations of California law as described above.

166.    The violation of the above laws and regulations, and of fundamental California public policy protecting workers and lawfully abiding employers, serve s unlawful predicate acts and practices for purposes of the Bus. & Prof. Code.

167.    The acts and practices described above have allowed Defendants to gain an unfair competitive advantage over law-abiding employers and competitors.

168.    Accordingly, the acts and practices described above constitute unfair, unlawful, and fraudulent business practices within the meaning of the Bus. & Prof. Code.

169.    As a direct and proximate result of the acts described herein, Newman has been denied compensation in amount according to proof at trial.

170.    Newman is thereby entitled to restitution pursuant to Bus. & Prof. Code § 17203 for all wages and other compensation unlawfully withheld from Newman during the 4-year period prior to the filing of this Complaint.

## JURY DEMAND

171.    Newman hereby demands a trial by jury in this action.

## PRAYER FOR RELIEF

Newman prays for relief, as follows:

1.    For loss of past wages, earnings, salary, bonuses, stock and other employment benefits, according to proof;

2.    For loss of future wages, earnings, bonuses, stock and other future benefits of employment, according to proof;

3.    For additional economic loss and costs incurred by Newman, according to proof;

4.    For non-economic losses, including general damages for pain, suffering emotion and mental distress, according to proof;

5.    For consequential damages, including the costs of locating and securing substitute employment;

6.    For punitive damages, according to proof;

7.     For interest and prejudgment interest;

8.     For costs of the suit incurred herein;

9.     For attorneys' fees and costs according to proof; and

10.    For such other and further relief as this Court deems just and proper.

Dated: May 11, 2022                                   PERETZ & ASSOCIATES


                                                      By: _____
                                                          Yosef Peretz
                                                      Attorneys for Plaintiff STEVEN NEWMAN

# EXHIBIT 1

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Stephen Newman**<br>**c/o Peretz & Associates**<br><br>**22 Battery Street, Suite 200**<br><br>**San Francisco, CA 94111** | From:  **San Jose Local Office**<br>**96 N Third St ,Suite 250; San Jose, CA 95112** |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **556-2022-00376** | **Cryselda Lott,**<br>**Investigator** | **(408) 889-1950** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

Less than 180 days have elapsed since the filing date. I certify that the Commission's processing of this charge will not be completed within 180 days from the filing date.

The EEOC is terminating its processing of this charge.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally signed by Rosa M. Salazar
DN: cn=Rosa M. Salazar, o=U.S. EEOC, ou=San Jose Local Office,
email=rosa.salazar@eeoc.gov, c=US
Date: 2022.02.10 17:36:08 -08'00'

Enclosures(s)

**Rosa M. Salazar**
**Director**

*(Date Issued)*

cc:  **Amy J Lambert**
**Associate General Counsel**
**Google**
**1600 AMPHITHEATRE PKWY**
**MOUNTAIN VIEW, CA 94043**

**Yosef Peretz**
**Peretz & Associates**
**22 Battery Street, Suite 200**
**San Francisco, CA 94111**

Enclosure with EEOC
Form 161-B (11/09)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

# EXHIBIT 2



**Steve Newman**
steve.m.newman@gmail.com
9 March 2018

<u>**This offer supersedes and replaces any prior versions**</u>

Dear Steve,

Thank you for your interest in Google LLC! We are delighted to offer you the exempt position of Customer Engineer, gSuite Specialist. If you have any questions about the contents of this letter, your recruiter will be happy to help you. We look forward to working with you!

**Salary**
You will receive an annual salary of $135,000.00, which will be paid biweekly and subject to applicable payroll deductions and tax withholding. This salary is subject to periodic review.

**Bonus Target**
You are eligible to participate in the company discretionary bonus plan; your annual bonus target will be 15.0% of your base salary. The actual bonus amount could be larger or smaller than this amount, based on your performance, and the performance of the company. The exact bonus amount is at the sole discretion of Google. The components of your bonus are subject to periodic review.

**Sign-On Bonus**
Additionally, Google will pay you a one-time Sign-On Bonus of $30,000.00, less applicable deductions and tax withholding, within thirty (30) days following your start date at Google. Should your employment with Google end within your first twelve months of employment, you agree to repay the Sign-On Bonus on a prorated basis. We encourage you to consult a tax professional for information on all current IRS reporting requirements.

**Equity Compensation**
Upon approval by Alphabet Inc.'s Board of Directors (the "Board"), you will receive a one-time grant of restricted stock units ("GSUs" or "Award"). This Award will entitle you to that number of GSUs determined by Google by dividing $160,000.00 by the closing price of Alphabet's Class C stock on the trading day immediately prior to the date of grant, rounded up to the nearest full GSU. At the time of vest, the vested number of GSUs will convert to shares of Alphabet Inc. ("Alphabet") Class C stock. If the US financial markets are closed on a vesting date, shares will vest on the next trading day.

The GSUs will vest over a four-year period immediately following your start date according to the applicable vesting schedule. The number of GSUs granted and the vesting schedule details will be provided in the grant materials that you should receive shortly after the grant.

This Award and all future equity awards are contingent and issued only upon approval by the Board, and are subject to the terms and conditions of applicable plan documents and award agreements. Vesting in GSUs is contingent on continued employment on the applicable vesting dates. Further details on the GSUs will be available to you shortly after your start date. Please be aware that this program and subsequent processes could be changed at any time, at the discretion of the Board.

**Benefits**
As a regular full-time employee you will be eligible for various benefits offered to similarly-situated Google employees in accordance with the terms of Google's policies and benefit plans. Among other things, these benefits currently include medical and dental insurance, life insurance, and a 401(k) retirement plan. You will be automatically enrolled in the pre-tax 401(k) plan at 10% into the plan's default investment fund (see the Plan's SPD for the latest information), which is a portfolio of stocks and bonds that gradually becomes more conservative as your year of retirement approaches. You will be able to change your deferral amount and fund allocation upon your hire. The eligibility requirements and other information regarding these benefits are set forth in more detailed documents that are available from Google. With the exception of the "employment at-will" policy discussed herein, Google may, from time to time in its sole discretion, modify or eliminate its policies and the benefits offered to employees.

**Confidential and Proprietary Information**
You are being offered employment at Google based on your personal skills and experience, and not due to your knowledge of any confidential, proprietary or trade secret information of a prior or current employer or an entity, such as a university or college. Should you accept this offer, we do not want you to make use of or disclose any such information or to retain or disclose any materials from a prior or current employer. Likewise, as an employee of Google, it is likely that you will become knowledgeable about confidential, trade secret and/or proprietary information related to the operations, products and services of Google and its clients. To protect the interests of both Google and its clients, all employees are required to read and sign the enclosed At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement documents as a condition of employment with Google. This agreement, which provides for arbitration of all disputes arising out of your employment, is enclosed for your signature.

**Insider Trading**

Google employees are subject to Alphabet's strict policy against insider trading, which prohibits, among other things, employees, contractors and temporary workers from trading Alphabet stock during certain time periods and engaging in any derivative transactions in Alphabet stock. It will be your responsibility to educate yourself regarding Alphabet's insider trading policies and to ensure you are in full compliance. If you have any questions about Alphabet's policy against insider trading, please contact Human Resources.

**Export Control**

If an export control license is required in connection with your employment, this offer is further contingent upon Google's receipt of the export control license and any similar approvals. Your employment with Google will commence following receipt of such export control license and governmental approvals; and is conditioned upon your (a) maintaining your employment with Google, and (b) continued compliance with all conditions and limitations contained in such a license. If for any reason such export control license and governmental approvals cannot be obtained within six (6) months from your date of signature, this offer will automatically terminate and have no force and effect.

**At-Will Employment**

Please understand that this letter does not constitute a contract of employment for any specific period of time, but will create an "employment at-will" relationship. This means that the employment relationship may be terminated with or without cause and with or without notice at any time by you or Google. No individual other than the Chief Executive Officer of Google has the authority to enter into any agreement for employment for a specified period of time or to make any agreement or representation contrary to Google's policy of employment at-will. Any such agreement or representation must be in writing and must be signed by the Chief Executive Officer. Your signature at the end of this letter confirms that no promises or agreements that are contrary to our at-will relationship have been committed to you during any of your pre-employment discussions with Google, and that this letter, along with the At Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement, contain our complete agreement regarding the terms and conditions of your employment.

**Next Steps**

We look forward to an early acceptance of this offer. This offer will remain open for 5 (five) business days following your receipt of this letter and is contingent upon your start date no later than April, 2018. New Hire orientation is held every Monday (or Tuesday if Monday is a holiday). The number of spaces in each session is limited; please work with your recruiter to select an available start date that works for you.

Additionally, this offer and your employment are contingent upon satisfactory results from your background check and reference checks. In order for Google to comply with the Immigration Reform and Control Act, your employment with Google is contingent on your eligibility to work in the United States. Accordingly, you must provide Google with documentation of your identity and eligibility for employment in the United States; please bring such documentation on your first day. In addition, if you are working in the United States pursuant to a US visa status, please provide new or renewed evidence of your eligibility for employment before the expiration of your initial work authorization.

To indicate your acceptance of Google's offer, please electronically sign and date the offer letter copy and At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement at the URL link provided in the email. A duplicate original is enclosed for your record. You will receive an email regarding your new hire orientation 5 days prior to your start date. If you do not receive this email by the Thursday prior to your start, please send an email to newhire-orientation@google.com for information.

Steve, we look forward to working with you.

Sincerely,

Sundar Pichai
CEO
Google LLC


I accept this offer of employment with Google and agree to the terms and conditions outlined in this letter.

_Steve Newman_
22F960A94BB2476...
_____
Steve Newman

3/9/2018
_____
Date

**GOOGLE LLC**

**AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT**

As a condition of my employment with Google LLC, its parent, subsidiaries, successors or assigns (together "Google"), and in consideration of my Google employment and receiving from Google confidential information and compensation, I agree to the terms of this At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement (this "Agreement"):

**1.    At-Will Employment**.  MY GOOGLE EMPLOYMENT IS FOR AN UNDEFINED PERIOD AND IS AT-WILL EM-PLOYMENT, WHICH MEANS IT MAY END AT ANY TIME, WITH OR WITHOUT CAUSE OR NOTICE. NO AGREEMENT PROVIDING OTHERWISE IS PERMITTED OR VALID UNLESS IT IS IN WRITING AND APPROVED BY A VICE PRESI-DENT OR SENIOR VICE PRESIDENT IN GOOGLE'S LEGAL DEPARTMENT.

**2.    Confidential Information**.

(a)    *Definition of Google Confidential Information*.  "Google Confidential Information" means any information in any form that relates to Google's business and is (i) a trade secret; (ii) proprietary information that does not legally constitute a "trade secret," but is made Google's property by contract in the form of this Agreement; or (iii) information that is otherwise legally protectable. Examples include, but are not limited to, Google's non-public information that relates to its actual or anticipated business, products or services, research, development, technical data, customers, customer lists, markets, software, hardware, finances, Inventions (as defined below), and user data (i.e., any information directly or indirectly collected by Google from users of its services). The foregoing are only examples of Google Confidential Information.  If I am uncertain as to whether any particular information or materials constitute Google Confidential Information, I shall seek written clarification from Google's Legal Department.

Notwithstanding the definition set forth above, Google Confidential Information does not include information that I can show by competent proof: (i) was generally known to the public at the time of disclosure, or became generally known after disclosure to me; (ii) was lawfully received by me from a third party without breach of any confidentiality obligation; (iii) was known to me prior to receipt from Google; or (d) was independently developed by me or independent third parties without breach by me or any third party of any obligation of confidentiality or non-use.

(b)    *Nonuse and Nondisclosure*.  During and after my Google employment, I will hold all Google Confidential Information in strict confidence and trust. I will take all reasonable precautions to prevent any unauthorized use or disclosure of Google Confiden-tial Information, and I will not (i) use Google Confidential Information or Google Property (as defined below) for any purpose other than for the benefit of Google in the scope of my employment, or (ii) disclose Google Confidential Information to any third party without the prior written authorization of Google. I agree that all Google Confidential Information that I use or generate in connec-tion with my employment belongs to Google (or third parties identified by Google). I understand that my violation of this Section 2 may lead to disciplinary action, up to and including termination and/or legal action. Notwithstanding my confidentiality obliga-tions, I am permitted to disclose Google Confidential Information that is required to be disclosed by me pursuant to judicial order or other legal mandate, provided that I have given Google prompt notice of the disclosure requirement and that I fully cooperate with any efforts by Google to obtain and comply with any protective order imposed on such disclosure. Additionally, I understand that nothing in this Agreement limits any right I may have to discuss terms, wages, and working conditions of employment, as protected by applicable law.

(c)    *Former Employer Information / Definition of Google Property*.  I will not use or disclose in connection with my Google employment or bring onto Google's electronic or physical property, facilities, or systems (collectively, "Google Property") any pro-prietary information, trade secrets, or any non-public material belonging to any previous employer or other party unless consented to in writing by such employer or party and Google.

**3.    Inventions**.

(a)    *Definition of Inventions*.  "Inventions" includes inventions, designs, developments, ideas, concepts, techniques, devices, discoveries, formulae, processes, improvements, writings, records, original works of authorship, trademarks, trade secrets, all related know-how, and any other intellectual property, whether or not patentable, registrable, or protectable under patent, copyright, trade secret or similar laws.

(b)    *Assignment of Inventions*.  Except as provided in Section 3(e) below and, if I work in the state of Washington, except as provided in Section 3(f) as well, Google LLC, or its designee, will have sole and exclusive ownership of all Inventions that I created, conceived, invented, developed, reduced to practice, or otherwise contributed to, solely or jointly with others, during my Google employment (including during my off-duty hours and whether or not in the course of my Google employment) that (i) are developed with the use of Google Property or Google Confidential Information, (ii) result from work performed by me for Google, or (iii) relate to Google's business or actual or demonstrably anticipated research and development, and any intellectual property rights in the Inventions (the "Assigned Inventions"). Without further compensation, I will promptly disclose in writing to Google any Assigned Inventions and assign to Google my rights in any Assigned Inventions.  I hereby irrevocably assign, and agree to

DocuSign Envelope ID: 4C63C79D-B880-4931-8C86-2D14FF49F9D3

assign, to Google LLC, or its designee, my rights in all Assigned Inventions. I understand that this assignment is intended to, and does, extend to subject matters currently in existence, those in development, as well as those not yet in existence. All works of authorship made by me (solely or jointly with others) within the scope of and during my Google employment are "works for hire" as defined in the United States Copyright Act, and Google LLC will be considered the author and owner of such copyrightable works. The decision whether or not to commercialize or market any Assigned Inventions is within Google's sole discretion and for Google's sole benefit, and I will not claim any consideration as a result of Google's commercialization of any such Inventions. I agree to maintain for Google detailed and accurate written records of all Assigned Inventions that I make (solely or jointly with others) for Google.

(c)     _Prior Inventions_. I list in Exhibit A all Inventions that I solely or jointly made before my Google employment, which belong to me and which are not assigned to Google (collectively, "Prior Inventions"). I agree that if I incorporate (or have incorporated) a Prior Invention into any Assigned Inventions, product, or service of Google, or use a Prior Invention in the scope of my employment, I hereby grant to Google a royalty-free, irrevocable, perpetual, transferable worldwide license (with the right to sublicense) to make, have made, use, import, sell, reproduce, distribute, modify, adapt, prepare derivative works of, display, perform, to sublicense third parties with the same rights, and to otherwise exploit such Prior Invention.

(d)     _Securing Intellectual Property Rights_. I agree to assist Google (or its designee) at Google's expense to assign, secure, and enforce all intellectual property rights in any Assigned Inventions in any and all countries, by disclosing to Google all pertinent information and data, and signing any document that Google reasonably deems necessary. If Google is unable for any reason to obtain my signature to any document required to assign, secure, and enforce any intellectual property rights in any Assigned Inventions, then I hereby irrevocably appoint Google, its officers and agents as my agents and attorneys-in-fact to execute any documents on my behalf for this purpose. This power of attorney will be considered coupled with an interest and will be irrevocable. My obligations under this Section 3(d) will continue after my Google employment ends.

(e)     _Exception to Assignments_. I have been notified and understand that the terms of this Agreement requiring disclosure and assignment of Inventions to Google do not apply to any invention I have developed entirely on my own time without using any of Google Property or Google Confidential Information, except for those inventions that either (i) relate at the time of conception or reduction to practice of the invention to Google's business, or actual or demonstrably anticipated research or development of Google or (ii) result from any work or services that I performed for Google.

While employed, I will advise Google promptly in writing of any inventions that I believe meet the foregoing criteria and that I have not disclosed on Exhibit A for a confidential ownership determination.

(f)     _Inventions on Own Time — Exemption From Agreement (Washington Employees Only)_. If I work for Google in the state of Washington, I am not assigning, or offering to assign, any of my rights to any improvement, discovery, or invention that qualifies fully under the provisions of Revised Code of Washington Section 49.44.140, or any statute of similar nature, which provides as follows:

"A provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer does not apply to an invention for which no equipment, supplies, facilities, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable."

**4.     Conflicting Employment**.

(a)     _Other Employment or Activities_. During my Google employment, I will not engage in any other employment or other business-related activity that (i) directly relates to the business in which Google is now involved, becomes involved, or has plans to become involved, or (ii) otherwise conflicts with Google's business interest and/or causes a disruption of its operations without seeking and receiving express written permission in advance from Google's Ethics and Compliance team.

(b)     _Prior Agreements with Other Parties_. My compliance with this Agreement and the performance of my duties as a Google employee will not breach any invention assignment, proprietary information, confidentiality, or similar agreement with any former employer or other party.

**5.     Return of Google Property and Information**.

(a)     _Return of Google Property and Information_. Upon termination of my Google employment, I will not take with me or retain any documents or materials or copies thereof containing any Google Confidential Information. I agree to return all Google Property and Google Confidential Information (original, hard and electronic copies) in my possession on or before my last day of employment and will not keep, recreate, or deliver to any other party any Google Confidential Information or Google Property. If, at the time of termination, I have Google Confidential Information stored in my personal computer or any mobile, cloud or other storage medium, I shall so advise Google. I will then work with Google to ensure that the location of all such information

is fully disclosed to Google, that the information is retrieved by Google in a forensically sound manner, and that the information is permanently deleted by Google or its designee. I agree, on Google's request, to sign a document confirming my agreement to honor my responsibilities contained in this Agreement after my departure.

(b)      *Compliance*. I have no reasonable expectation of privacy in any Google Property or in any other documents, equipment, or systems used to conduct the business of Google. Google may audit and search any Google Property or such documents, equipment, or systems without further notice to me for any business-related purpose at Google's reasonable discretion. I will provide Google with access to any documents, equipment, or systems used to conduct the business of Google immediately upon request. I consent to Google taking reasonable steps to prevent unauthorized access to Google Property and Google information. I understand that I am not permitted to add or use any unauthorized websites, software, applications, or any applications that I do not have a license or authorization for use to or on any Google Property. It is my responsibility to comply with Google's policies governing use of Google Property.

**6.      Notification**. I consent to Google notifying third parties, including without limitation actual or potential employers, about my obligations under this Agreement.

**7.      Non-Solicitation of Employees**. During my Google employment and for twelve (12) months immediately following the end of my Google employment for any reason, whether voluntary or involuntary, with or without cause, I will not directly or indirectly solicit any of Google's employees to leave their employment.

**8.      Export Statement of Assurance**. In the scope of my Google employment, Google may release to me items (including software, technology, systems, equipment, and components) subject to the Export Administration Regulations ("EAR") or the International Traffic in Arms Regulations ("ITAR"). I certify that I will not export, re-export, or release these items in violation of the EAR or ITAR and I will not disclose, export, or re-export these items to any person other than as required in the scope of my Google employment. If I have any question regarding this Section 8, I immediately will contact Google's Legal Services Department before taking any actions.

**9.      Employee Handbook**. I understand that Google's Employee Handbook consists of policies listed in a table of contents on Google's "employee handbook, guidelines and company policies" internal website, and that those policies incorporate by reference supplemental policies. I understand that as a Google employee, Google's Employee Handbook applies to me. I agree to read, understand, and comply with Google's Employee Handbook, including supplemental policies, as they may be revised from time to time.

**10.      Use of Images**. During my employment, Google or its agents may obtain images of me for later use in materials. My name may or may not be included along with such images. I grant Google permission for such use of my images, both during and after my employment, and I understand that I will not receive any royalties or other compensation for this use.

**11.      Protected Activity / DTSA Notification**. For purposes of this Agreement, "Protected Activity" means filing a claim, charge or complaint, or otherwise disclosing relevant information to or communicating, cooperating, or participating with, any state, federal, or other governmental administrative body or agency, including, but not limited to, the Securities and Exchange Commission, the Equal Employment Opportunity Commission, U.S. Department of Labor, the National Labor Relations Board, and the Office of Federal Contract Compliance Programs but does not include the disclosure of any Google attorney-client privileged communications. I understand that nothing in this Agreement prohibits me from engaging in any Protected Activity. I understand that I am not required to obtain prior authorization from Google or to inform Google prior to engaging in any Protected Activity.

In addition, notwithstanding my confidentiality obligations set forth in Section 2 of this Agreement, I understand that, pursuant to the Defend Trade Secrets Act of 2016, I will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (1) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and (2) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, provided such filing is made under seal. I understand that in the event it is determined that the disclosure of Google trade secrets was not done in good faith pursuant to the above, I will be subject to substantial damages, including punitive damages and attorneys' fees.

**12.      Arbitration and Equitable Relief**

(a)      *Arbitration*. IN CONSIDERATION OF MY EMPLOYMENT WITH GOOGLE AND ITS PROMISE TO ARBITRATE ALL DISPUTES I AGREE THAT, EXCEPT AS PROVIDED IN SECTION (b) BELOW, ANY AND ALL, PAST, PRESENT OR FUTURE, CONTROVERSIES, CLAIMS, OR DISPUTES THAT GOOGLE MAY HAVE AGAINST ME, OR THAT I MAY HAVE AGAINST GOOGLE OR ANY GOOGLE EMPLOYEE, OFFICER, DIRECTOR, AGENT, SHAREHOLDER OR BEN-EFIT PLAN, IN THEIR CAPACITY AS SUCH OR OTHERWISE (OR THE SUCCESSORS AND ASSIGNS OF ANY OF THEM), INCLUDING BUT NOT LIMITED TO DISPUTES ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT OR THE TERMINATION OF MY GOOGLE EMPLOYMENT ("COLLECTIVELY, "DISPUTES"), WILL BE SUBJECT TO BINDING ARBITRATION UNDER THE FEDERAL ARBITRATION ACT (9 U.S.C. §1 ET SEQ.) OR, IF FOR ANY REASON THE FEDERAL ARBITRATION ACT DOES NOT APPLY, THE LAW OF ARBITRABILITY OF THE

DocuSign Envelope ID: 4C636790-B880-4931-8086-2D14FF19F909

STATE IN WHICH I WORK OR LAST WORKED FOR GOOGLE. DISPUTES INCLUDE, BUT ARE NOT LIMITED TO, ANY STATUTORY CLAIMS ARISING UNDER OR RELATING TO ANY FEDERAL, STATE, OR LOCAL LAW OR REGULATION, INCLUDING BUT NOT LIMITED TO CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §1981, REHABILITATION ACT, CIVIL RIGHTS ACTS OF 1866, 1871 AND 1991, PREGNANCY DISCRIMINATION ACT, EQUAL PAY ACT, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE WORKER ADJUSTMENT AND RETRAINING NO-TIFICATION ACT, THE FAIR CREDIT REPORTING ACT, THE FAMILY AND MEDICAL LEAVE ACT, THE FAIR LABOR STANDARDS ACT, CLAIMS OF RETALIATION, HARASSMENT, DISCRIMINATION, OR WRONGFUL TERMINATION, AND ANY OTHER CONTRACTUAL, TORT OR STATUTORY CLAIMS, TO THE FULLEST EXTENT ALLOWED BY LAW. **I UNDERSTAND THAT, EXCEPT AS PROVIDED BELOW, GOOGLE AND I WAIVE ANY RIGHT TO A JUDGE OR JURY TRIAL ON ANY DISPUTE.**

THE ARBITRATOR, AND NOT ANY FEDERAL, STATE, OR LOCAL COURT OR AGENCY, SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTE RELATING TO THE INTERPRETATION, APPLICABILITY, ENFORCEABIL-ITY OR FORMATION OF THIS ARBITRATION PROVISION INCLUDING, BUT NOT LIMITED TO ANY CLAIM THAT ALL OR ANY PART OF THIS ARBITRATION PROVISION IS VOID OR VOIDABLE; PROVIDED, HOWEVER, THAT ANY CLAIM THAT THE CLASS ACTION WAIVER, COLLECTIVE ACTION WAIVER, OR REPRESENTATIVE ACTION WAIVER IN SECTION (C) BELOW, OR ANY PORTION OF THEM, IS UNENFORCEABLE, INAPPLICABLE, UNCON-SCIONABLE, OR VOID OR VOIDABLE, WILL BE DETERMINED ONLY BY A COURT OF COMPETENT JURISDICTION AND NOT BY AN ARBITRATOR.

(b)    _Disputes Not Covered_.  THIS ARBITRATION PROVISION DOES NOT PROHIBIT THE FILING OF OR PURSUIT OF RELIEF THROUGH THE FOLLOWING: (1) A COURT ACTION FOR TEMPORARY EQUITABLE RELIEF IN AID OF ARBITRATION, WHERE SUCH AN ACTION IS OTHERWISE AVAILABLE BY LAW, (2) AN ADMINISTRATIVE CHARGE TO ANY FEDERAL, STATE OR LOCAL EQUAL EMPLOYMENT OPPORTUNITY OR FAIR EMPLOYMENT PRACTICES AGENCY, (3) AN ADMINISTRATIVE CHARGE TO THE NATIONAL LABOR RELATIONS BOARD, OR (4) ANY OTHER CHARGE FILED WITH OR COMMUNICATION TO A FEDERAL, STATE OR LOCAL GOVERNMENT OFFICE, OFFICIAL OR AGENCY (FOR NUMBERS (2) THROUGH (4) COLLECTIVELY, "A GOVERNMENT COMPLAINT").

THE FOLLOWING CLAIMS ARE NOT COVERED BY THIS ARBITRATION PROVISION: CLAIMS FOR WORKERS' COM-PENSATION OR UNEMPLOYMENT BENEFITS; CLAIMS THAT AS A MATTER OF LAW CANNOT BE SUBJECT TO ARBITRATION; CLAIMS COVERED BY (AND DEFINED IN) THE FRANKEN AMENDMENT, FIRST ENACTED IN SEC-TION 8116 OF THE DEFENSE APPROPRIATIONS ACT OF 2010, OR ANY SIMILAR FEDERAL STATUTE, REGULATION OR EXECUTIVE ORDER RESTRICTING THE USE OF ARBITRATION AGREEMENTS (INCLUDING BUT NOT LIMITED TO EXECUTIVE ORDER 13673), IF AND ONLY IF SUCH STATUTE, REGULATION OR EXECUTIVE ORDER IS EFFEC-TIVE AND APPLICABLE TO MY EMPLOYMENT AND THIS ARBITRATION PROVISION; AND CLAIMS UNDER AN EMPLOYEE BENEFIT OR PENSION PLAN THAT SPECIFIES A DIFFERENT ARBITRATION PROCEDURE.

(c)    _Individual Dispute Resolution_.  TO THE MAXIMUM EXTENT PERMITTED BY LAW, I HEREBY WAIVE ANY RIGHT TO BRING ON BEHALF OF PERSONS OTHER THAN MYSELF, OR TO OTHERWISE PARTICIPATE WITH OTHER PERSONS IN, ANY CLASS OR COLLECTIVE ACTION. IF AND WHEN APPLICABLE LAW PERMITS WAIVER OF REP-RESENTATIVE CLAIMS UNDER THE CALIFORNIA PRIVATE ATTORNEYS GENERAL ACT (OR ANY SIMILAR LAW), I WAIVE THE RIGHT TO BRING ANY SUCH CLAIM. IF A COURT ADJUDICATING A CASE INVOLVING GOOGLE AND I WERE TO DETERMINE THAT THERE IS AN UNWAIVABLE RIGHT TO BRING A CLASS, COLLECTIVE, OR REPRE-SENTATIVE ACTION, ANY SUCH ACTION SHALL BE BROUGHT ONLY IN COURT, AND NOT IN ARBITRATION.

THIS ARBITRATION PROVISION DOES NOT APPLY TO ANY CIVIL LAWSUIT THAT WAS FILED BY GOOGLE OR FILED BY ME AGAINST GOOGLE (WHETHER INDIVIDUALLY OR AS A MEMBER OF A CLASS) (COLLECTIVELY, "PENDING CLAIM(S)") PRIOR TO MY EXECUTION OF THIS AGREEMENT; PROVIDED, HOWEVER, THAT IF I WAS SUBJECT TO AN AGREEMENT TO ARBITRATE CLAIMS WITH GOOGLE PRIOR TO THE COMMENCEMENT OF ANY PENDING CLAIM AND THE PENDING CLAIM WAS COVERED BY THE PRIOR AGREEMENT TO ARBITRATE, THAT PREVIOUS AGREEMENT TO ARBITRATE WILL CONTINUE TO APPLY TO ANY PENDING CLAIM, INCLUDING WITH-OUT LIMITATION ANY APPLICABLE AND ENFORCEABLE CLASS, COLLECTIVE OR REPRESENTATIVE ACTION WAIVER.

(d)    _Arbitration Procedure_. GOOGLE AND I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY JAMS, PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES"), WHICH ARE AVAIL-ABLE ON THE "RULES/CLAUSES" PAGE OF JAMS' PUBLIC WEBSITE (http://www.jamsadr.com/rules-employment-arbitra-tion) AND NO OTHER RULES. THE ARBITRATOR WILL HAVE THE POWER TO DECIDE MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, MOTIONS TO DISMISS OR TO STRIKE, AND DEMURRERS PRIOR TO ANY ARBITRATION HEARING. THE ARBITRATOR WILL HAVE THE POWER TO AWARD ANY INDIVIDUAL REMEDIES AVAILABLE UNDER APPLICABLE LAW, INCLUDING INJUNCTIVE RELIEF. GOOGLE AND I WILL BEAR EACH OF

DocuSign Envelope ID: 4C63C70D-B880-4931-8C86-2D14FF19F9D3

OUR OWN COSTS AND FEES, EXCEPT THAT THE ARBITRATOR WILL APPLY COST AND FEE-SHIFTING LAW TO THE BENEFIT OF THE PREVAILING PARTY, BASED ON THE DISPUTE(S) ASSERTED. THE DECREE OR AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED AS A FINAL AND BINDING JUDGMENT IN ANY COURT HAVING JURISDICTION THEREOF. GOOGLE WILL PAY FOR ANY FEES CHARGED BY THE ARBITRATOR OR JAMS, EXCEPT THAT I WILL PAY ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION THAT I INITIATE, UP TO THE AMOUNT THAT I WOULD HAVE PAID HAD I FILED A COMPLAINT IN THE COURT OF GENERAL JURISDICTION IN THE STATE IN WHICH I WORK OR LAST WORKED FOR GOOGLE. THE ARBITRATOR SHALL APPLY THE SUBSTANTIVE LAW (AND THE LAW OF REMEDIES, IF APPLICABLE) OF THE STATE IN WHICH THE CLAIM AROSE, OR FEDERAL LAW, OR BOTH, AS APPLICABLE TO THE CLAIM(S) ASSERTED. THE ARBITRATOR IS WITHOUT JURISDICTION TO APPLY ANY DIFFERENT SUBSTANTIVE LAW OR LAW OF REMEDIES. THE FEDERAL RULES OF EVIDENCE SHALL APPLY. THE ARBITRATOR WILL NOT HAVE THE AUTHORITY TO DISREGARD OR REFUSE TO ENFORCE ANY LAWFUL GOOGLE POLICY, AND THE ARBITRATOR WILL NOT ORDER OR REQUIRE GOOGLE TO ADOPT A POLICY NOT OTHERWISE REQUIRED BY LAW. THE DECISION OF THE ARBITRATOR WILL BE IN WRITING AND CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW. I AGREE THAT ANY ARBITRATION UNDER THIS ARBITRATION PROVISION WILL BE HELD IN THE COUNTY IN WHICH GOOGLE EMPLOYS OR LAST EMPLOYED ME.

(e) _Exclusive Remedy_. EXCEPT AS PROVIDED BY LAW, THE JAMS RULES, OR THIS ARBITRATION PROVISION, ARBITRATION WILL BE THE SOLE, EXCLUSIVE, AND FINAL REMEDY FOR ANY DISPUTE BETWEEN ME AND GOOGLE.

(f) _Governing Law_. NOTWITHSTANDING SECTION 13(a) BELOW, THIS ARBITRATION PROVISION IS ENTERED PURSUANT TO AND GOVERNED BY THE FEDERAL ARBITRATION ACT (9 U.S.C. § 1 ET SEQ.), OR IF FOR ANY REASON THE FEDERAL ARBITRATION ACT DOES NOT APPLY, THE LAW OF ARBITRABILITY OF THE STATE IN WHICH I WORK OR LAST WORKED FOR GOOGLE.

(g) _Entire Agreement_. EXCEPT AS PROVIDED IN SECTION (c) ABOVE REGARDING PENDING CLAIMS, THIS ARBITRATION PROVISION CONSTITUTES THE ENTIRE AGREEMENT BETWEEN GOOGLE AND ME WITH RESPECT TO THE SUBJECT MATTER IN THIS ARBITRATION PROVISION AND SUPERSEDES ALL PRIOR ARBITRATION AGREEMENTS, WRITTEN OR ORAL.

### 13. General Provisions

(a) _Governing Law_. This Agreement will be governed by the laws of the state of California.

(b) _Entire Agreement_. This Agreement, together with its Exhibit, and any executed written offer letter between Google and me, are the entire agreement between Google and me with respect to the subject matter in such documents and supersede all prior written and oral agreements or discussions. If there are conflicts between this Agreement and the offer letter, this Agreement will control. Except as provided in Section 1 of this Agreement, no change to this Agreement, other than amendments to Sections 3 and 4 relating to personal open source projects in a format prepared by Google, will be effective unless in writing signed by a Senior Vice President of Google LLC and me.

(c) _Severability_. If one or more of the provisions in this Agreement are deemed void, the remaining provisions will continue in full force and effect.

(d) _Successors and Assigns_. This Agreement will be binding upon my heirs, executors, assigns, administrators, and other legal representatives and will be for the benefit of Google. Google may assign this Agreement to anyone at any time without my consent. There are no intended third-party beneficiaries to this Agreement.

(e) _Waiver_. Waiver by Google of a breach of any provision of this Agreement will not waive its right to take action based on any other breach.

(f) _Survivorship_. The rights and obligations of the parties to this Agreement will survive the end of my Google employment.

(g) _Injunctive Relief_. I understand that in the event of a breach or threatened breach of this Agreement by me, Google may suffer irreparable harm and will therefore be entitled to injunctive relief to enforce this Agreement. I also understand that, in the event of a breach of this Agreement by me, Google may pursue any and all available legal remedies, including monetary damages.

Signature of Employee: 

_Eff. Date November 21 2016_
_Non-CA Version_

**Exhibit A**

**GOOGLE LLC**
**LIST OF PRIOR INVENTIONS**
**AND ORIGINAL WORKS OF AUTHORSHIP**

I understand that listing a project or an invention here does not mean that Google is granting me permission to continue working on the project or invention. This is only a listing of inventions or original works of authorship done prior to employment.

| Title | Date | Identifying Number or Brief Description |
|---|---|---|
| | | |

_X_ No inventions or improvements

___ Yes they are listed above

___ Additional Sheets Attached

Signature of Employee: *Steve Newman*

Print Name of Employee:  Steve Newman

Date:  3/9/2018